1

2

3

4

5

6

7

8

9

10              IN THE UNITED STATES DISTRICT COURT

11           FOR THE EASTERN DISTRICT OF CALIFORNIA

12

13  HANGER PROSTHETICS & ORTHOTICS,  )   2:06-cv-2879-GEB-KJM
    INC.,                           )
14                                  )   ORDER RE MOTIONS IN LIMINE
                   Plaintiff,       )
15                                  )
              v.                    )
16                                  )
    CAPSTONE ORTHOPEDIC, INC., a    )
17  California Corporation; GLEN ELLIS,)
    an individual; SANTIAGO ROSALES, an)
18  individual; DAVID KIMZEY, an    )
    individual; and ANGELA FULTON, an )
19  individual,                     )
                                    )
20                 Defendants.      )
                                    )
21  ─────────────────────────────────)

22          On May 23, 2008, Defendants filed two motions in limine.  On

23  May 26, 2008 Plaintiff filed five motions in limine.  All of the

24  motions are opposed.

25  I. Defendants' Motion in Limine Number One

26          Defendants seek to exclude "[P]laintiff's belatedly

27  designated expert witness, Mark Alcock ("Alcock"), from testifying at

28  trial and making references to or introducing evidence of Mr. Alcock's

findings and opinions." (Defs.' Mot. No. 1 at 1:25-26.)  Defendants
also seek sanctions against Plaintiff "for its bad faith gamesmanship
on this issue."  (Defs.' Mot. No. 1 at 6:23-24.)

A.  Background

On January 17, 2007, shortly after filing its Complaint and
roughly a year and a half ago, Plaintiff submitted a declaration by
Mark Alcock, a computer forensic investigator, in support of an
application for expedited discovery.  The declaration detailed
Alcock's professional credentials, the investigations he made on a
Hanger laptop computer, the files he recovered, and conclusions he
made "based on [his] experience and training and the evidence at hand
. . . ." (Alcock Decl., Dkt. No. 18, ¶ 19.)  On March 12, 2007,
Plaintiff's initial Rule 26 disclosures identified Alcock as a person
likely to have discoverable information.  On March 13, 2007 a Status
(Pretrial Scheduling) Order issued ordering that "[e]ach party shall
comply with Federal Rule of Civil Procedure 26(a)(2)'s initial expert
witness disclosure and report requirements on or before September 28,
2007 and with the rebuttal expert disclosure authorized under the Rule
on or before October 29, 2007."[1]  (Scheduling Order at 3:11-14.)

On September 28, 2007 Plaintiff disclosed only one expert
witness, Suzanne M. Stuckwisch.  On January 22, 2008, Defendants moved
to exclude Alcock's testimony at trial since Plaintiff had not
disclosed him as an expert witness by the deadline to do so.
Plaintiff argued that Alcock would testify to matters he personally
perceived and would not give expert opinions.  Defendants' motion was
therefore denied as moot.  (Order, Dkt. No. 77.)  On February 7, 2008,

---

[1]     All future references to Rules are to the Federal Rules of
Civil Procedure unless otherwise noted.

Defendants moved for summary judgment of all claims against them.  In

opposition to the motion, Plaintiff submitted the above mentioned

Declaration of Alcock.  The court rejected Plaintiff's argument that

Alcock's declaration contained only lay opinions not covered by the

expert disclosure and reporting requirements of Rule 26(a)(2), holding

that

> [t]he findings from Alcock's investigation do not
> constitute lay opinions since Alcock's testimony
> regarding computer misuse was based upon
> scientific, technical, or other specialized
> knowledge.  Instead, these findings fall within
> the scope of Federal Rule of Evidence 702, and are
> governed by its standards and the corresponding
> expert disclosure requirements of Federal Rule of
> Civil Procedure 26.

Hanger Prosthetics & Orthotics, Inc. v. Capstone Orthopedic, Inc., --

F. Supp. 2d --, 2008 WL 1734771, at *17 n.2 (E.D. Cal. Apr. 14, 2008).

On April 21, 2008, Plaintiff filed a Third Supplemental Initial

Disclosure Statement listing Alcock as an expert witness, six months

after the deadline for designating experts, three months after the

discovery completion date, and less than two months before trial.

(Kachmar Decl., Ex. C.)

B.  Expert Versus Lay Testimony[2]

Federal Rule of Evidence 702 allows expert testimony if the

expert is qualified and his or her testimony meets certain

foundational requirements.  Lay witnesses may give opinion testimony

under Federal Rule of Evidence 701, but only if their opinions are

"not based on scientific, technical, or other specialized knowledge

within the scope of Rule 702."  The 2000 Amendments to Federal Rule of

Evidence 701 added this requirement

---

[2]    The reasoning for the April 14, 2008 ruling that Alcock's
declaration constitutes expert testimony is further explained here.

3

> to eliminate the risk that the reliability
> requirements set forth in Rule 702 will be evaded
> through the simple expedient of proffering an
> expert in lay witness clothing.
>                          * * *
> The amendment does not distinguish between expert
> and lay *witnesses*, but rather between expert and
> lay *testimony*.  Certainly it is possible for the
> same witness to provide both lay and expert
> testimony in a single case. . . . The amendment
> makes clear that any part of a witness' testimony
> that is based upon scientific, technical, or other
> specialized knowledge within the scope of Rule 702
> is governed by the standards of Rule 702 and the
> corresponding disclosure requirements of the Civil
> and Criminal Rules.

Fed. R. Evid. 701 advisory committee's note, 2000 Amendments.  "[T]he distinction between lay and expert witness testimony is that lay testimony 'results from a process of reasoning familiar in everyday life,' while expert testimony 'results from a process of reasoning which can be mastered only by specialists in the field.'"  Id. (quoting State v. Brown, 836 S.W.2d 530, 549 (1992)).

As the Sixth Circuit recently noted in United States v. Ganier, 468 F.3d 920, 926 (6th Cir. 2006), "the categorization of computer-related testimony [as either lay or opinion testimony] is a relatively new question . . . ."  In Ganier, the Sixth Circuit considered testimony by a computer forensic specialist who used forensic software to determine what searches were run on a computer and on what dates they were run.  Id. at 924.  The court rejected the government's argument that this testimony was "simply lay testimony available by running commercially-available software, obtaining results, and reciting them," reasoning "[t]he average layperson today may be able to interpret the outputs of popular software programs as easily as he or she interprets everyday vernacular, but the interpretation Drueck [the specialist] needed to apply to make sense

of the software reports is more similar to the specialized knowledge
police officers use to interpret slang and code words used by drug
dealers," which is expert testimony.  <u>Id.</u> at 925-26 (internal
quotations omitted).

Similarly, in <u>Furmanite Am., Inc. v. T.D. Williamson, Inc.</u>,
506 F. Supp. 2d 1126, 1133 (M.D. Fla. 2007), the court observed that
the testimony of a computer forensic specialist who uncovered and
extracted data from computers would be "expert opinion [if it was on]
the highly technical question of whether and when a defendant
performed a 'selective restoration' of a computer's hard drive in
order to maliciously overwrite data on a misappropriated laptop
computer."(citation omitted) (citing <u>MMI Prods., Inc. v. Long</u>, 231
F.R.D. 215, 216 (D. Md. 2005)).

A review of Alcock's declaration makes clear that his
analysis "results from a process of reasoning which can be mastered
only by specialists in the field."  <u>State v. Brown</u>, 836 S.W.2d at 549.
For instance, Alcock declares

> [u]sing forensic software, I was able to establish
> that an external, mass storage device ("EMSD") had
> been connected on several occasions to both the
> Visalia Server and the Laptop; further, I was able
> to confirm that the exact same EMSD was connected
> to both systems by confirming its globally unique
> identification number ("GUID").  I conducted my
> forensic exam on the working copies [of hard
> drives] to analyze the data therein.  With respect
> to the Laptop, I discovered that a mass deletion
> took place, and the contents of the email folders
> and the 'My Documents' folders for each had been
> systematically deleted. . . . The Microsoft
> windows Operating System had been re-installed to
> further corrupt the pre-existing data.  I was able
> to determine that much of this deletion activity
> occurred in October 2006, including as late as
> October 9, 2006, the day that Ms. Fulton returned
> the laptop computer to Hanger.

(Alcock Decl. ¶¶ 10, 15.)  Alcock's proposed testimony also includes identifying "files and fragments of files previously deleted from the Laptop," which he indicates involved expert reasoning since his work was "a time-consuming process due to the number of computer drives and files involved, and **the complexity of retrieving files and artifacts damaged due to the attempts of sterilizing the drive** to conceal or deprive the use of data once present on the laptop."  (Alcock Decl. ¶¶ 16, 17, 18 (emphasis added).)  Accordingly, Alcock's proposed testimony constitutes expert testimony.

## C.  Failure to Disclose

Therefore, Plaintiff was required to have disclosed Alcock as an expert witness under Rule 26(a)(2)(A).  Rule 37(c)(1) "gives teeth to [this] requirement[]," <u>Yeti by Molly, Ltd. v. Deckers Outdoor Corp.</u>, 259 F.3d 1101, 1106 (9th Cir. 2001), by prescribing: "If a party fails to provide information or identify a witness as required by Rule 26(a) . . . the party is not allowed to use that . . . witness to supply evidence    . . . at a trial, unless the failure was substantially justified or is harmless."  Fed. R. Civ. P. 37(c)(1). The Advisory Committee Notes to the 1980 Amendment to Rule 37 state that this is an "automatic," "self-executing sanction."  "[T]he burden is on the party facing sanctions to prove harmlessness."  <u>Yeti by Molly</u>, 259 F.3d at 1106.  The Ninth Circuit analyzed this harmless element in <u>Yeti by Molly</u> "by looking at whether the failure to disclose the information prejudiced the opposing party."  <u>Galentine v. Holland Am. Line-Westours, Inc.</u>, 333 F. Supp. 2d 991, 993 (W.D. Wash. 2004).

Plaintiff argues "[f]ederal courts have found that precluding expert testimony is a 'drastic remedy and should only be

applied in cases where the party's conduct represents flagrant bad
faith and callous disregard of the Federal Rules.'" (Pl.'s Opp'n at
6:4-13 (citing <u>Sullivan v. Glock</u>, 175 F.R.D. 497, 504 (D. Md. 1970)).)
However, in the circumstances at issue here, unless harmlessness is
shown, "even absent a showing in the record of bad faith or
willfulness, exclusion is an appropriate remedy for failing to fulfill
the required disclosure requirements of Rule 26(a)." <u>Yeti by Molly</u>,
259 F.3d at 1106.

Plaintiff argues "Hanger's failure to timely disclose Alcock
as an expert witness has not resulted in any unfair prejudice or
surprise[, since Hanger] identified Alcock as a percipient fact
witness, timely disclosed its intention to rely upon Alcock's
observations as well as the entire contents of his testimony over the
entire course of this litigation . . . ." (Opp'n at 3:17-21 (emphasis
removed).) Plaintiff contends:

> Defendants had every opportunity to depose or
> propound discovery relating to Mr. Alcock and the
> repeated disclosures of the nature and scope of
> his personal knowledge. More importantly, even
> though Defendants chose not to depose Mr. Alcock,
> additional discovery relating to [the] nature of
> Mr. Alcock's 'conclusions' is unnecessary as
> Defendants have been aware of the scope of Mr.
> Alcock's testimony since his affidavit was filed
> . . . .

(<u>Id.</u> at 5:20-6:3.) Defendants rejoin they are harmed:

> First, plaintiff's refusal to designate Alcock as
> an expert witness in compliance with the Court's
> Scheduling Order deprived defendants of an
> opportunity to designate their own expert in
> rebuttal to Mr. Alcock. Second, Defendants would
> have been unable to depose Mr. Alcock as an expert
> because an expert cannot be deposed until there
> has been compliance with F.R.C.P. 26(a)(2)(B)
> requirements. (See F.R.C.P. 26(b)(4)(A).)
> Finally, defendants were justified . . . in
> relying on plaintiff's express representations
> that Mr. Alcock would not be called as an expert

witness at trial.  As plaintiff admits, as late as November 1, 2007, well after the deadline for disclosing expert witnesses, plaintiff considered Mr. Alcock to be its 'forensic computer consultant," not a designated expert witness. (See Plaintiff's Opposition at p. 5:5-8.)  Therefore, under the Rules of Federal Procedure, Defendants would have been unable to depose Mr. Alcock since he was not a designated expert but instead, was a consultant. (See F.R.C.P. 26(b)(4)(B); see also California Practice Guide, Federal Civil Practice Before Trial (2008), § 11.370, at pp. 11-43 - 11-44 (recognizing that a party may not depose an opposing party's "consultant" absent "extraordinary circumstances.").)

(Defs.' Reply at 4:20-5:5 (emphasis in original).)

Plaintiff relies on Donell v. Perpetual Invs., Inc., 2007 WL 4707739, at *1-2 (D. Nev. May 7, 2007), in which the court denied defendants' motion to exclude a witness, previously designated as a fact witness, from testifying at trial as an expert.  The court reasoned, "any prejudice that will result from allowing [the witness] to testify as an expert will be the result of Defendants' strategic decisions in avoiding deposing [the witness] and in failing to object to the sale of the property in the underlying SEC action." Id.  Thus, under these circumstances, the court concluded defendants were not harmed.

Harm was found in Castillo v. City and County of San Francisco, 2006 WL 618589, at *2 (N.D. Cal. Mar. 9, 2006), a case in which both parties listed Dr. Blackwell as a fact witness in their initial disclosures and defendants gave "vague cross-reference to the other side's witnesses in its expert disclosure," but failed to name Dr. Blackwell.  Defendants were subsequently prevented from having Dr. Blackwell give expert testimony since he was not properly designated in their expert disclosures. Id. at *1-2.  The court held the failure to disclose was not harmless because "[i]f plaintiff had known that

1  defendants were seeking to use Dr. Blackwell for an opinion" they
2  could have deposed him, retained a rebuttal witness or brought a
3  motion in limine to bar his opinions as lacking adequate foundation.
4  Id. at *2.

5        The witness exclusion sanction was also upheld by the
6  Seventh Circuit in Musser v. Gentiva Health Servs., 356 F.3d 751, 754
7  (7th Cir. 2004), a case in which witnesses were only identified
8  earlier in the proceeding as fact witnesses. Plaintiff argued in
9  Musser, "it would be a pointless formality to disclose in writing a
10 list of names of persons already known to Gentiva through prior
11 discovery . . . with the designation 'expert witness.'" Id. at 757.
12 The court rejected the argument stating,

13         [f]ormal disclosure of experts is not pointless.
           Knowing the identify of the opponent's expert
14         witnesses allows a party to properly prepare for
           trial. [Defendant] should not be made to assume
15         that each witness disclosed by [plaintiffs] could
           be an expert witness at trial.  The failure to
16         disclose experts prejudiced [defendant] because
           there are countermeasures that could have been
17         taken that are not applicable to fact witnesses,
           such as attempting to disqualify the expert
18         testimony on grounds set forth in Daubert v.
           Merrell Dow Pharmaceuticals, Inc., [509 U.S. 579
19         (1993)], retaining rebuttal experts, and holding
           additional depositions to retrieve the information
20         not available because of the absence of a report.

21 Id. at 757-58.

22        Plaintiff has not sustained its burden of showing Defendants
23 would not be harmed if the late disclosure is allowed on the eve of
24 trial, scheduled to commence next week.  Allowing Alcock to be
25 disclosed as an expert witness at this stage of the proceeding is not
26 harmless.  For the reasons stated, Defendants' motion to exclude
27 Alcock's proposed expert testimony is granted.
28 D.  Additional Sanctions

1         Defendants "request the Court to sanction [P]laintiff for

2 its bad faith tactics in belatedly designating Alcock as an expert

3 after representing to the Court that he would not offer opinion

4 testimony in this matter." (Defs.' Mot. No. 1 at 6:12-15.)  Plaintiff

5 rejoins sanctions are unwarranted since "Defendants have not

6 demonstrated that Plaintiff willfully or intentionally attempted to

7 subvert Defendants' ability to take discovery or fulfill its notice

8 obligations with respect to Mark Alcock.  Instead, . . . Defendants

9 have been aware of Mr. Alcock's observations and personal knowledge

10 relevant to this lawsuit for more than 16 months." (Pl.'s Opp'n at

11 6:22-27.)

12         While it is recognized that Plaintiff appears to have

13 engaged in gamesmanship with respect to the disclosure of Alcock as an

14 expert witness, that its failure to timely disclose Alcock is

15 inexcusable, and has resulted in Defendants' expenditure of attorney's

16 fees, the additional sanction Defendants' seek will not be imposed.

17 II.  Remaining in limine motions

18         The remaining motions in limine are denied.

19 Dated:  June 13, 2008

20

21 _____
GARLAND E. BURRELL, JR.

22 United States District Judge

23

24

25

26

27

28