IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

---oOo---

BEFORE THE HONORABLE GARLAND E. BURRELL, JR., JUDGE

---oOo---

HANGER PROSTHETICS &
ORTHOTICS, INC.,

     Plaintiff.

                            No. Civ.  S-06-2879

vs.

CAPSTONE ORTHOPEDIC, INC.,
et al.,

     Defendants.

_____/

---oOo---

REPORTER'S TRANSCRIPT

HEARING

MONDAY, DECEMBER 15, 2008

---oOo---

Reported by:       KIMBERLY M. BENNETT, CSR #8953

                  RPR, CRR, RMR

APPEARANCES


For the Plaintiff:


     FOLEY & LARDNER
     One Maritime Plaza, 6th Floor
     San Francisco, California  94111
     BY:  NANCY J. GEENEN
         Attorney at Law


For the Defendants Capstone, Ellis and Santiago:


     BERRY & BLOCK LLP
     2150 River Plaza Drive, Suite 415
     Sacramento, California  95823
     BY:  SCOTT M. PLAMONDON
         Attorney at Law

For the Defendants Fulton & Kimzey:


     PALMER KAZANJIAN WOHL PERKINS, LLP
     520 Capitol Mall, Suite 600
     Sacramento, California  95814
     BY:  ROBIN K. PERKINS
         Attorney at Law

1                           SACRAMENTO, CALIFORNIA

2                         MONDAY, DECEMBER 15, 2008

3                                 ---oOo---

4              THE CLERK:  Calling 06-2879; Hanger versus Capstone.

5              MS. DODD:  Good morning, Your Honor.  Kimberly Dodd

6     and Nancy Geenen on behalf of Hanger.

7              MR. PLAMONDON:  Good afternoon, Your Honor.  Scott

8     Plamondon on behalf of Capstone, Ellis and Santiago.

9              MR. PERKINS:  Robin Perkins, Your Honor, good

10    afternoon.  I'm here for defendants Fulton and Kimzey.

11             THE COURT:  Thank you.  This is the time for the final

12    pretrial conference.

13             You actually have two trial dates.  You had requested

14    that I schedule -- I don't know if I said you -- someone, one

15    of the counsel, if not all of you, I don't remember,

16    requested that I schedule an early trial, and I gave you the

17    earliest trial that I could give you based upon the nature of

18    my docket, and that is February 10, 2009.  And I also gave

19    you another trial date, which is June 9, 2009.  And I was

20    going to -- let me see if we have any information concerning

21    the February date.

22             (Discussion held off the record.)

23             THE COURT:  I'm talking to my courtroom deputy.  It

24    appears that one or more of you know as much as I know about

25    the criminal case.  Apparently one of you, or more, have

1   already called the criminal counsel, at least the prosecutor,

2   and tried to ascertain the status of that matter, and you

3   received the same answer that my courtroom deputy received,

4   and that is that we don't know.

5        So, let's begin with the question of when you're going

6   to trial.  At the time this was scheduled, perhaps you wanted

7   two trial dates.  Now that you're closer to the first trial

8   date, maybe you don't.  Let me get input from you.

9        MS. DODD:  Your Honor, I think we would still like to

10  wait and see what happens with the other case, and hold on

11  the February trial date, and maybe set a date certain

12  sometime in the next month at which point we'll just give up

13  and defer to the June trial date.

14       THE COURT:  Okay.

15       MR. PLAMONDON:  Your Honor, given my relative new

16  arrival on this case, we would prefer the June trial date,

17  certainly, along with the certainty applied to that date.  If

18  I understand the last hearing here, the June 9th date was

19  practically a certainty, while this February date, obviously,

20  has a lot of uncertainty attached to it.  So, based on that,

21  I'd rather, one, have the additional time to prepare, and

22  two, have the certainty so that we don't prepare once for a

23  February trial and repeat these steps in June.

24       MR. PERKINS:  We're acceptable to either date, Your

25  Honor, it's up to you.

1          THE COURT:  I've already given you the earlier date,

2     so I'm not inclined to revisit why I did that at this

3     juncture, unless you give me really strong reasons why I

4     should.

5          MS. DODD:  Your Honor, we also were wondering if

6     anything else has opened up on your calendar before June

7     where we would have a solid trial date.

8          THE COURT:  Apparently I have criminal trials

9     scheduled before the June date, that's why you received that

10    day.

11         An issue on my mind is what should I try to accomplish

12    at this hearing.  One thing I'm really concerned about are

13    the jury instructions, so that means that I need to look at

14    what the claims are.  From my perspective, I think that's

15    what I should do.

16         I'm looking at the joint pretrial statement on page

17    25.  Usually what I do is I start with plaintiff's claims,

18    but I think I'm going to start with what's on 25 at line 18

19    under the word defendants.

20         This first affirmative defense, is that really an

21    affirmative defense?

22         MR. PLAMONDON:  It may be in light of some new case

23    law, Your Honor.  I added to this statement, when I got my

24    hands on it, that we're considering whether or not the

25    Supreme Court's decision in Edwards v. Anderson may impact

 1    the holding of one of our issues in this case, and in light

 2    of the holding in that case, I wonder if there may still

 3    continue to be, and that's why it's enclosed in this, an

 4    affirmative defense to a claim stated.

 5         THE COURT:  I can't tell what this is a defense to.

 6    It seems to me that if you have a defense to a particular

 7    claim that you would state that.  It doesn't state a claim.

 8    So, what is this a defense to?  If that Supreme Court case

 9    indicates what you convey, then which of plaintiff's claims

10    is it a defense to?

11         MR. PLAMONDON:  It would apply, Your Honor, to a

12    number of the claims related to -- most appropriately to

13    breach of contract claims that are alleging that they

14    breached a contract of employment with Hanger.  And I'm

15    trying to find the particular line.  And the breaches of

16    duty, of loyalty and fiduciary duty, to the extent those are

17    still present in the case.  Because I believe the holding in

18    Edwards v. Anderson, if it doesn't explicitly state, it can

19    be extended reasonably to apply to this case to state that to

20    the extent that the alleged employment contract created these

21    duties, those duties cannot exist as a matter of law based on

22    the holding in that case.

23         THE COURT:  It's a California Supreme Court case?

24         MR. PLAMONDON:  That's correct, Your Honor.

25         THE COURT:  How would you contemplate this issue being

1    handled?

2          MR. PLAMONDON:  It may need to be accomplished through

3    a jury instruction, Your Honor, or perhaps a motion in

4    limine.

5          THE COURT:  What kind of jury instruction would cover

6    this?  Isn't it a question of law?

7          MR. PLAMONDON:  I suppose you're correct, Your Honor,

8    it is a question of law.  Probably more direct -- more

9    appropriately directed toward a motion before the Court.

10         THE COURT:  I don't think it's a motion in limine, is

11   it?

12         MR. PLAMONDON:  That's correct, that's what I was

13   meaning to say.

14         THE COURT:  It doesn't sound to me as though it's a

15   motion in limine.  A motion in limine, from my perspective,

16   is addressed at evidentiary issues.  You're raising a

17   substantive question.

18         MR. PLAMONDON:  That's correct, Your Honor.

19   Unfortunately, one, the late nature of that case being

20   published, I believe since the first trial date was vacated,

21   and all of the work on the former pretrial conference was

22   done, it gives us, essentially, new case law that I believe

23   may have a reasonable impact on the case that has developed

24   just since this case has been last before this Court.

25         THE COURT:  Well, I think that you need to -- I'm not

 1    going to tell you how to handle that.  I do not think that

 2    it's something that's presented to the jury.  Based upon what

 3    you're saying, it's not presented to the jury, it's not an

 4    issue at all.  And I don't think it's a matter to be decided

 5    in limine because that's not the purpose of it.  That isn't

 6    what I contemplate as an in limine motion.

 7         One reason why I'm talking to you about these claims

 8    is because I typically handle the jury instructions myself,

 9    and the last time I looked at instructions in this case they

10    were just too voluminous.  It was very difficult for me to

11    work on them.  It appears that it's going to be something

12    that might consume my chambers.  And so I want to make sure,

13    if I can, that I don't have unnecessary instructions being

14    submitted.

15         So I don't think this is a matter for a jury

16    instruction.  And I think the way you've stated it, it's

17    overly broad.  You have something specific in mind and you

18    should have stated that.  I don't know if I want to -- I may

19    spend some time later during this proceeding, if we have

20    time, to see if I can have you to coin the issue so that it's

21    more narrow, but I'm going to look at some of these other

22    matters that are set forth under it.

23         How about number two, what does that connote?  I see

24    what it says, what is it a defense to?

25         MR. PLAMONDON:  Well, again, Your Honor, I think this

KIMBERLY M. BENNETT, OFFICIAL COURT REPORTER, USDC -- (916) 442-8420

1   goes to the breach of contract, breach of duty of loyalty,

2   breach of fiduciary duty claims that are alleged in the

3   complaint.  And as well as, perhaps, the unfair competition

4   and intentional interference with prospective advantage

5   claims, in that, you know, some of the damages alleged by

6   Hanger in their complaint and the related documents it

7   appears may have been caused by other activities, at least in

8   our opinion other activities.

9        For instance, I know there was an office that closed

10  in one of the towns.  You know, there could be issues with --

11  a lot of the damages here are based on income that allegedly

12  would have been received by Hanger throughout the course of a

13  long period of time in these patients's lives, and we

14  believe -- there seems to be some evidence that the movement

15  of doctors -- sorry, the movement of -- actually, various

16  people related to this case, including doctors, but also

17  technicians, can relate to Hanger's own actions becoming a

18  cause for some of the damages that are alleged.

19       THE COURT:  I was asking a question about number two.

20  Is number three different from two?

21       MR. PLAMONDON:  I believe the two are both related,

22  Your Honor, in that one of them is talking about direct

23  actions or damages, the other is talking about results that

24  are the proximate cause of the actions that are taken that

25  are addressed in number two.  I'm sorry, I think I've

1   reversed those.  But two and three are related both to the

2   same thing.

3          And four, also, Your Honor, follows up with that,

4   where as to say in some supervening cause that might have

5   caused these damages, not something actually either party did

6   or controlled.  That's why that's existing in there and left

7   in there.

8          THE COURT:  Supervening cause meaning what?  When I

9   ask you that question, I'm thinking about a jury instruction.

10          MR. PLAMONDON:  Okay.

11          THE COURT:  So what would be said to the jury that

12   would illuminate what's meant by superseding cause?

13          MR. PLAMONDON:  Superseding cause is beyond the

14   control of the defendants.  You know, these -- which weren't

15   the defendants's fault, and can't be charged to the

16   defendants.  I mean, we could have a patient that moved away,

17   out of the area, that no longer requires the service of

18   either the plaintiff or the defendants to this matter.  That

19   would be, I believe, a superseding cause.  The death of a

20   patient, unfortunate as it is, would also be a superseding

21   cause that would, again, reduce or lower the revenue that

22   would be going to Hanger.

23          THE COURT:  I know I'm cutting you off, but those two

24   examples, you wouldn't need a special instruction for that,

25   would you?  I mean, wouldn't you be able to just show that

1   through the evidence?  Plaintiff would be seeking damages

2   from your clients based upon that, but wouldn't you just be

3   meeting that evidence and showing that plaintiff can't

4   sustain the burden as to those patients?

5          MR. PLAMONDON:  I think you have a very good point

6   there, Your Honor.  I think that's true.

7          I mean, what we're dealing with here is claims of

8   damages that, according to the expert report, could be going

9   on for 20 something years.  So it's our attempt to at least

10  direct some discussion toward that, or some instruction

11  toward that end, that highlights the fact that damages that

12  are foreseen in, you know, what I term a crystal ball for the

13  next 20 years, are something that can't be charged to

14  defendants.

15         THE COURT:  I'm going to stop reporting right now

16  because I'm going to just spend some time just talking to try

17  to figure out why you need to have these matters included in

18  a pretrial order, and then I will put a summary of what is

19  said on the record.  This discussion is consuming a lot of

20  this record.  So, you can stop reporting.

21         (Discussion held off the record.)

22         THE COURT:  We'll go back on the record.  Thank you.

23         MR. PLAMONDON:  I took a look at this list of -- I

24  took a fresh look at this list of affirmative defenses in

25  light of what you've said previously, and I believe that

1   one -- numbers one, six, and seven should remain, but I am

2   inclined to agree with the Court that the balance of the

3   affirmative defenses presented in the joint pretrial

4   statement should be struck.

5          THE COURT:  Okay.  I'll strike the balance.

6          Explain seven.

7          MR. PLAMONDON:  There are various actions committed by

8   Hanger during this, and in the months leading up to it, where

9   they indicate to me that they may have -- I mean, I guess,

10   I -- I was of the mind the words they spoke for themselves,

11   they might have abandoned any right to certain claims

12   contained in the complaint.

13          THE COURT:  I need clarification.

14          MR. PLAMONDON:  Yeah.  I suppose I was unclear on

15   that.  And I think seven can be struck, too, as well, Your

16   Honor.

17          THE COURT:  All right.  Is plaintiff asserting a

18   claim, from plaintiff's perspective, that is arguably barred

19   by the Supreme Court's decision in Edwards?

20          MS. GEENEN:  Plaintiffs are asserting a claim for

21   breach of an employment agreement, on the one hand,

22   misappropriate -- and the breach of the employment agreement

23   provision that the plaintiffs have alleged that has been

24   breached is the non-solicitation provision of the agreement,

25   along with the breaches of duty and loyalty.

1          The Edwards case stands for the proposition that an

2     employer may not bar an employee from walking across the

3     street and opening a competing business.  It does not address

4     any of the other duties that exist with respect to management

5     employees or the trade secrets which may have been stolen.

6          So, to the extent that an employee is permitted to

7     walk across the street and start a competing business with

8     their education, their experience, they may do so.

9          In this case, the Edwards decision does not apply

10     because the plaintiffs have alleged that the defendants have

11     actually stolen more than -- have stolen patient lists,

12     business forms, proprietary and confidential information in

13     the nature of patient files.  We are not alleging that the

14     defendants have breached any agreements with the employer

15     with respect to what they have learned through this education

16     and experience while working.  And that's the distinction

17     that the California Supreme Court uses when it criticizes

18     many of the decisions in the Ninth Circuit with respect to

19     geographic or time limitations on non-compete provisions.

20          So we would argue that the Edwards decision in the

21     California Supreme Court has really clarified and tried to

22     address what has been seen as an exception to the public

23     policy of the state of California about non-compete

24     provisions in employment agreements.

25          To take that case much further than that, we don't see

```
 1    that analysis in the Edwards decision.  It may be that a

 2    court sometime in the future may take that further, but

 3    currently the Edwards decision only addresses the limitations

 4    on competition, not on misappropriation of trade secrets, not

 5    on unfair competition as defined in other ways under the

 6    statute, and certainly not on any of the breaches of

 7    contracts or -- employment contracts or agreements that

 8    Hanger has alleged in its complaint, and that remain in the

 9    case to be tried.

10              THE COURT:  Okay.  I'm scanning your claims now,

11    plaintiff's claims.  Look at unfair competition on page 24,

12    section F.

13              MS. GEENEN:  Yes, Your Honor.

14              THE COURT:  What unlawful business act or practice is

15    referenced here?

16              MS. GEENEN:  The unfair competition --

17              THE COURT:  It says, I'm sorry, unlawful business

18    practice.

19              MS. GEENEN:  Correct.  And that becomes part and

20    parcel of the solicitation by Capstone of Hanger current

21    employees to join the business.  It consists of the

22    usurpation of the actual facility in Visalia to the lease in

23    which Hanger -- the lease in which the Hanger facility and

24    the facility -- the lease of the facility that Hanger

25    occupied in Visalia.
```

1          THE COURT:  I didn't understand what you just said.

2          MS. GEENEN:  Sure.  Hanger had an address in Visalia,

3     it was getting ready to move to a new facility that hadn't

4     been completed.  As part of Capstone's unfair competition and

5     unfair business practices, Mr. Kimzey and Mr. Ellis were

6     negotiating directly with Hanger's then landlord to defeat

7     Hanger's opportunity to extend the then current lease by 60

8     days to accommodate the delay in the completion of the new

9     Hanger facility in Visalia.

10          We also allege that Capstone and the individual

11     defendants printed off patient lists, Hanger business forms,

12     insurance information and contacts, that would allow Capstone

13     an unfair advantage in opening its new business.

14          A further allegation is that the practitioners

15     themselves delayed patient care and/or canceled or

16     rescheduled appointments outside of normal business hours in

17     the several months between the time they had signed

18     employment agreements with Capstone but were still Hanger

19     employees.

20          We also allege that Capstone offered many of the

21     Hanger employees a two week compensation at which they would

22     not be at work at Capstone but that would have followed their

23     resignation from Hanger.

24          Finally, just backing up in the time frame, the

25     timeline, we allege that Capstone and Mr. Ellis approached

1    each of these employees -- or several of these employees,

2    some who went with them, some who didn't, and offered them

3    ownership interest in Capstone as a means to entice them to

4    move across and to engage in such activities -- in such

5    unfair business practices.

6            So our jury instruction, Your Honor, that we have

7    previously submitted, does bring to the jury some of these

8    specific actions, essentially asking the jury to decide,

9    based on the facts you've heard, does this action or event

10   comprise an unfair business practice.

11           THE COURT:  You said too much for me to be able to

12   take notes, and it's not here.

13           MS. GEENEN:  Your Honor, it is in our trial brief.

14           THE COURT:  You mean in your -- you don't have a trial

15   brief in connection with the present trial, do you?

16           MS. GEENEN:  No, Your Honor.  But in the submissions

17   of the current joint pretrial statement --

18           THE COURT:  Is that what you mean by trial brief?

19           MS. GEENEN:  No, I mean an actual trial brief.  This

20   case was continued just the day before we were ready to pick

21   a jury.  All of our filings have not changed.  In fact, our

22   witness lists are the same, our exhibit lists are the same.

23   We had filed, and Your Honor had ruled on, our motions in

24   limine.  Plaintiff would suggest that all that really remains

25   is to address the jury instructions and the verdict form,

1    because at the point in time we had the hearing that

2    continued the original trial date, we were prepared, as was

3    this Court, to go forward.

4         Your Honor at that hearing did express his concern

5    that the jury instructions were way too complicated, way too

6    voluminous, and failed to address -- and failed to be written

7    in a way that Your Honor felt would be helpful to both

8    yourself, your chambers, and to the jury.

9         What we would really suggest, as plaintiffs in this

10   case, is that the Court set a date for the parties to submit

11   new jury instructions --

12        THE COURT:  Just a moment.

13        (Discussion held off the record.)

14        THE COURT:  I'm sorry.  Go ahead.

15        MS. GEENEN:  Just to recap a little bit, the parties

16   were ready to try their case.  At the hearing, the emergency

17   hearing to continue the trial date, Your Honor had expressed

18   his concern about the complex and voluminous jury

19   instructions.  I think our subsequent submission in the joint

20   pretrial statement for today's hearing is exactly the same.

21   There were a few things added, especially with respect to the

22   Edwards case by defendants, but other than that, that

23   document is the same document that this Court had already

24   seen and approved.

25        THE COURT:  You said seen and what?

1            MS. GEENEN:  And approved.  We have the Court's

2      original pretrial order.

3            THE COURT:  I'm not taking issue with that.  I am

4      confident you're right, I may have approved it, but I don't

5      think I should have.  I mean, perhaps because of the press of

6      judicial business I didn't ask the questions I'm now asking.

7      And I may not be able to resolve this as I think it should be

8      resolved, but I think ideally -- maybe it's not ideally.  I

9      think what is contemplated by Rule 16, as far as this

10     conference is concerned, is that I do flesh out what's meant

11     by an unlawful business act or practice so that there is no

12     risk of trial by surprise.

13           You're indicating to me in your response that because

14     of the history here there is no risk there because you've

15     already submitted a proposed jury instruction that explains

16     this concept.

17           MS. GEENEN:  Yes, Your Honor.  And trial briefs which

18     further flesh out the case law.  And we have exchanged

19     exhibits, and we have exchanged witness lists.  And, really,

20     I think for the best use of both the parties' time and the

21     Court's time, the piece that was most troubling were the jury

22     instructions and the verdict form.  And at the hearing Your

23     Honor had indicated that he was going to -- that we were all

24     going to spend most of that afternoon working through the

25     jury instructions.

1          What I'm now suggesting is that the Court set a date,

2    say, January 8th, by which the parties should submit new jury

3    instructions, a new jury verdict, or verdict form, so that we

4    have time now to address and simplify the instructions that

5    were submitted before and to take out many of the affirmative

6    defenses that have just now been waived.

7          Other than that, the parties were ready to go to

8    trial, so there isn't all that much work to be redone.  And

9    it would be probably the best use of our time as trial

10   attorneys to sit down -- because it's a new trial attorney,

11   both of you, and go through our jury instructions, and see

12   what we can do to maximize the time that we have, and then

13   minimize the concerns or objections the Court previously

14   expressed at the submitted instructions.

15         THE COURT:  Let me hear from the defense.

16         MR. PLAMONDON:  Ms. Geenan and I were having a

17   discussion in the hall prior to this hearing and it went down

18   those lines, Your Honor.  We feel that the previous pretrial

19   order, as well as the -- there was a preliminary jury

20   instruction set and voir dire that came from the Court, those

21   previous documents related to the trial were sufficient.

22   Obviously, the dates of the previous pretrial order would

23   need to reflect a different trial date, but past that, that

24   it was sufficient to address all the needs of the parties.  I

25   agree with Ms. Geenen.

1          THE COURT:  Okay.

2          MR. PERKINS:  And we are also in agreement, Your

3   Honor, to the procedure outlined by plaintiff's counsel,

4   obviously subject to your opinions.

5          THE COURT:  Well, maybe that's how we proceed.  I will

6   share something that I'm not sure I told you at the last

7   proceeding.

8          First, I did not review this matter before taking the

9   bench.  I had something else that occupied my time this

10  morning, and something else that occupied my time up to the

11  hearing.  I just asked my courtroom deputy to give me

12  something that was on my desk which concerns this case, and

13  it concerns something that troubled me about the verdict

14  form.  I don't know what troubled me now, but I can tell you

15  the issue.

16         There was something in the verdict form that caused me

17  to be concerned about whether the jury could give what's

18  called a split verdict.  There was something that lacked the

19  specificity required to ensure that the jury's verdict

20  reflected a unanimous decision on an issue.  I don't remember

21  now what it was.  But I did independent research on that

22  question, and I have a case that I found concerning just that

23  concept on the bench with me, but I don't appear to have the

24  verdict form in this folder.

25         I'm looking through my notes on the jury instructions.

1    What I actually did is I discussed my thoughts with one of my

2    prior law clerks, and that law clerk stayed so busy that the

3    law clerk never had time to work on the matters that I asked

4    the law clerk to analyze, because contrary to what I normally

5    do, it appears, since I have the law clerk's name on these

6    instructions, I was seeking to have one of my law clerks to

7    assist me with certain instructions.

8         I think last time plaintiff asserted a conspiracy

9    theory.  That's gone?

10        MS. GEENEN:  No, Your Honor, it still exists in the

11   pretrial.  It's at page 25, line 10.  We had a discussion on

12   the record, and also with respect to this Court's order to

13   the defendants's motion for summary judgment, and the Court

14   had found -- let me see if I can find it.

15        In docket number 108, which is the Court's order

16   granting in part and denying in part the defendants's motion

17   for summary judgment, the Court held that plaintiff's

18   conspiracy for breach of contract and breach of fiduciary

19   duty claims against Capstone fail as a matter of law, but

20   against the individuals the Court held that those claims

21   could go forward as the individual -- a jury could reasonably

22   infer from the evidence that each of those individuals

23   participated in the offense to commit wrongful acts against

24   plaintiff, and for the benefit of Capstone, that, in fact,

25   such wrongful acts were committed, and that plaintiff was

1    damaged as a result.

2         So, as to Mr. Ellis and Mr. Kimzey, Ms. Fulton and

3    Mr. Rosales, the Court held that the conspiracy claim could

4    go forward.  We did include it in the pretrial -- joint

5    pretrial statement, and I believe it survived into the

6    Court's pretrial order of May 14.

7         THE COURT:  This part of the joint pretrial statement

8    asserts the claim against all defendants, doesn't it?

9         MS. GEENEN:  Yes, Your Honor.  That is an error.  I

10   apologize.

11        THE COURT:  What are the names of the defendants

12   against whom the claim is asserted?

13        MS. GEENEN:  Glenn Ellis, Santiago Rosales, David

14   Kimzey, K-I-M-Z-E-Y, and Angela Fulton.

15        THE COURT:  So when do you contemplate submitting

16   proposed jury instructions?

17        MS. GEENEN:  The plaintiff would propose that we

18   submit revised jury instructions, verdict form on

19   January 8th.

20        THE COURT:  Do you concur?

21        MR. PLAMONDON:  Yes, Your Honor.

22        MR. PERKINS:  Yes, Your Honor.

23        THE COURT:  I would tentatively include -- well,

24   you're indicating that the prior pretrial order I issued is

25   sufficient, except for the dates need to be changed, certain

1    dates?

2         MR. PLAMONDON:  Yes, Your Honor.  I believe the order

3    is dated May 13, 2008.  And, obviously, it was based on a

4    previous trial date that was vacated.  So the order contains

5    a number of dates preceding that trial which, obviously, also

6    would just need to be changed to reflect the new trial date.

7    But in its substance --

8         MS. GEENEN:  Actually, Your Honor, that wasn't the

9    plaintiff's proposal.  All we're proposing to revise, and the

10   only new submission -- all we're proposing as a new

11   submission are the revised jury materials, the jury

12   instructions, and the verdict form.

13        There is no new issue other than if you wanted to

14   bring a motion in limine on the Edwards case, but I think

15   you've already indicated your thoughts as to that.  There are

16   no new issues.  There are no new witnesses.  And, again, the

17   only issue that was left open the day before trial were the

18   jury materials.  So the plaintiff's proposal has solely been

19   to change and set a new date for the submission of revised

20   jury instructions and a revised verdict form.

21        THE COURT:  Maybe you are saying almost the same

22   thing.

23        MS. DODD:  To clarify, Your Honor, there are a bunch

24   of dates in the pretrial order for trial briefs, agreed

25   statement, there is a whole bunch of items due before the

1    trial that we're saying we don't need to do it all because

2    this was already submitted before the first trial.  The only

3    thing that needs to be done before this next trial is the

4    jury instructions.  There should not be new dates for

5    anything else.

6         MR. PLAMONDON:  I think that's a reasonable point,

7    actually, Your Honor.  I mean, all of the dates that would be

8    changed would reflect documents that have already been filed

9    with the Court or submitted to the Court once before.  I

10   would -- I'm sorry if I catch Mr. Perkins here flatfooted,

11   he's a new entry into the case here, with the defendants

12   apparently parting ways toward the end here, I would --

13        THE COURT:  What?  You said he's part of something, I

14   couldn't hear the word.

15        MR. PLAMONDON:  Previously -- I'm sorry, Your Honor.

16   I probably just misspoke.  Previously in this case, and what

17   derailed this thing on the eve of trial, is all the

18   defendants were represented by one lawyer, and for reasons

19   that still are a little unclear, two of the defendants at the

20   eleventh hour needed to go off and get separate counsel.  So

21   while I sit here and speak, and say that as to my -- my

22   parties, the ones that I represent, that nothing more needs

23   to be submitted, I didn't want to speak for Mr. Perkins and

24   his clients.

25        MR. PERKINS:  With regard to my clients, Your Honor,

1   we would like to submit a trial brief.  The jury

2   instructions, obviously, need to be changed, and that's an

3   issue we will address with the new submittal.  Aside from

4   that, I believe the dates are -- simply need to be changed to

5   reflect the new trial date, whenever that will be.

6          THE COURT:  When do you contemplate submitting a trial

7   brief?

8          MR. PERKINS:  I can submit it as early as the

9   January 8th date upon which we're submitting the revised jury

10  instructions.  If you'd like it sooner, simply let me know.

11         THE COURT:  What do you contemplate including in the

12  trial brief?

13         MR. PERKINS:  I think more than anything, Your Honor,

14  there is a different perspective that we have as individual

15  defendants.  I simply want to set forth that.  I may restate

16  some of the law, but -- as it applies -- the facts apply, to

17  give the Court some guidance, perhaps, as to why we are

18  requesting some of the jury instructions, or the revision to

19  the jury instructions.  I think it might be helpful to the

20  Court.  I would make it short and simple.  I think I could do

21  it in probably ten pages or less.

22         THE COURT:  One thing that is helpful to me is having

23  reasonably anticipated evidentiary disputes addressed in the

24  trial brief as is required by the local rule.

25         Do you perceive such disputes, Mr. Perkins?

1          MR. PERKINS:  I think with the new decision from the

2    California Supreme Court, given this particular joint

3    pretrial statement, and the fact that it isn't specific with

4    regard to the allegations, the breach of contract, whether or

5    not those claims might conceivably be covered under the new

6    Supreme Court decision, that, yes, there might be some

7    evidentiary issues that I would like to raise in that trial

8    brief.

9          THE COURT:  I don't recall reading this recent Supreme

10   Court decision.  I did take time to ask plaintiff, from

11   plaintiff's perspective, whether plaintiff perceived any of

12   its claims being undermined by this decision, and plaintiff

13   responded in the negative and articulated what its claims

14   are.

15         Do you disagree with plaintiff, assuming plaintiff

16   articulated those claims that are going to be included in the

17   jury instructions?

18         MR. PERKINS:  If plaintiff articulated the claims

19   accurately today in court, that's different than what has

20   been submitted to this Court in the joint pretrial statement.

21   It's also different than the claims that have been asserted

22   in the complaint.

23         More specifically, on page 24 of the joint pretrial

24   statement, the claim for intentional interference with

25   prospective economic advantage, starting on line 4, it simply

1   describes intentional or wrongful acts.  There isn't anything

2   specific in there.  Those, conceivably, could include claims

3   which are now precluded under this latest Supreme Court

4   decision.

5          Similarly, under the unfair competition, while it is

6   generic as to the unlawful business act or practice, that

7   really is the malady of the joint pretrial statement, because

8   it is so generic, it is impossible to determine one way or

9   the other whether or not plaintiff intends to offer evidence

10  which may be precluded under this Supreme Court decision, or

11  attempt to assert claims which may be precluded.

12         Similarly, under the breach of contract claim, there

13  isn't a specific statement with regard to the breaches.  This

14  is on lines 22 and 23 with regard to Ellis, it's on lines 26

15  and 27 with regard to Mr. Rosales and my client Mr. Kimzey.

16  They're simply talking about breach of -- breaches of the

17  employment contract for Mr. Ellis, and then one or more

18  breaches of the written confidentiality obligations with

19  regard to my client.  And I simply think that some of those

20  may be covered by the new Supreme Court decision.

21         THE COURT:  If you file a trial brief on the same day

22  that the jury instructions are submitted, you may be

23  addressing issues in the trial brief that are not really at

24  issue in the case, because it appears that you would find

25  out -- I mean, plaintiff is indicating that its prior trial

1    brief and jury instructions spell out what the issues are.

2    So, maybe from that perspective, if -- but it sounds like you

3    don't agree, that you're indicating that plaintiff has

4    already in the past articulated an issue, stated an issue,

5    that offends the Supreme Court ruling, that's in violation of

6    some principle articulated by the Supreme Court.

7            MR. PERKINS:  If it's clarified by the jury

8    instructions, I think you're accurate, Your Honor.  If

9    plaintiff is specific with regard to the allegations of the

10   breach of contract, if plaintiff is specific with regard to

11   the allegations with regard to the interference with

12   prospective economic advantage and unfair competition, that

13   may eliminate the issues that I have.  So, I think you're

14   accurate.  I just don't know.  At this point in time it's

15   impossible to tell based on the allegations of the complaint

16   and the statements made in the joint pretrial statement.

17           THE COURT:  I'm trying to avoid reading something

18   that's not pertinent.

19           MR. PERKINS:  I think that's fair, Your Honor.  I'm

20   happy to submit it any time before the trial date which would

21   be most helpful or beneficial to you.

22           THE COURT:  I had a Post note telling me when the

23   trial date is.  When is it?

24           MS. GEENEN:  February 10th, Your Honor.

25           THE COURT:  What I understand, perhaps, is being

1    requested is that I should issue a supplement to the final

2    pretrial order already filed in which I state, Revised

3    verdict forms and jury instructions shall be filed no later

4    than January 8, 2009.  And, defendants have the option of

5    filing a trial brief no later than, I'm thinking, 8 days

6    after these instructions are submitted, January 16, 2009.

7    There is already a provision in the local rule for plaintiff

8    filing a reply trial brief if that is necessary.  I need not

9    say anything about that.

10         MS. GEENEN:  Thank you, Your Honor.

11         THE COURT:  Then based upon what you've said, that's

12   all I need to cover.

13         MS. GEENEN:  Yes, Your Honor.  If I may just make one

14   clarifying comment with respect to the issue regarding the

15   skeletal description of the elements of the claim.

16         I believe Mr. Perkins was concerned about not knowing

17   what was going to proof.  But in article 3 of the joint

18   pretrial statement we have a set of undisputed facts, and

19   that starts at page 3, and then in article 4, which starts at

20   page 4 of the joint pretrial statement, we have the disputed

21   facts.  Those factual issues go on, both from the plaintiff's

22   version and the defendants's version, all the way through to

23   page 17.

24         So to the extent that there is any concern about the

25   claims being stated purely by element, the parties together

 1    did lay out those facts.  And given that it's been a fair

 2    amount of time since this joint pretrial statement was filed

 3    by the parties, I just wanted to reference for the Court that

 4    the section on the elements of the claim are just there to

 5    describe the elements.  The actual facts which are

 6    undisputed, and the facts which are disputed, are part and

 7    parcel of the joint pretrial statement.

 8         Thank you.

 9         THE COURT:  The pretrial order -- let me rephrase it.

10    I don't remember if my prior pretrial order incorporates what

11    you have as undisputed facts in your most recent joint

12    pretrial statement.  So, if it doesn't, these undisputed

13    facts aren't going to be part of the pretrial order.  What

14    you've just mentioned as disputed facts, they're not part of

15    the pretrial order unless I incorporate them into the

16    pretrial order.

17         What I understand plaintiff to suggest, or maybe

18    state, is that the disputed facts section of your joint

19    pretrial statement narrows the issues in such a way as to

20    avoid the defense's concern about the Edwards issue.  And so

21    you are suggesting that if you are bound by those disputed

22    facts, then, from the plaintiff's perspective, there is no

23    Edwards issue.

24         MS. GEENEN:  That is correct, Your Honor.

25         THE COURT:  How about the defense?  You had indicated

1   there is an Edwards issue.  You heard what plaintiff just

2   said.  Is there an Edwards issue if the disputed facts are as

3   stated in the joint pretrial statement that you filed?

4        MR. PLAMONDON:  Going through the facts, reviewing

5   them again here briefly, Your Honor, I believe that is the

6   subject for a portion of this pretrial brief that we're

7   discussing here is to show that connection.  I do see on page

8   8, under the Section 4, the disputed factual issue that

9   begins on page 4 --

10       THE COURT:  Wait a minute.  You said page 8 at first,

11  didn't you?

12       MR. PLAMONDON:  Yes.  Correct.

13       THE COURT:  You're talking about your joint pretrial

14  statement?

15       MR. PLAMONDON:  Yes, that's correct, Your Honor.

16       THE COURT:  Then when you said Section 4, is page 8

17  part of Section 4?

18       MR. PLAMONDON:  It appears that way.

19       THE COURT:  Do I have to look for Section 4?  I found

20  page 8.

21       MR. PLAMONDON:  No, sir.  No, Your Honor.  You can

22  look at page 8.  There is --

23       THE COURT:  Where?

24       MR. PLAMONDON:  Line 21.  Line item number 21, which

25  is point 27.  Of course these are -- going through these

1   quickly, Your Honor, but relating to this alleged employment

2   agreement that exists here, I would say that the facts as I

3   understand them are ripe with references to this employment

4   agreement and an alleged breach of the employment agreement.

5              THE COURT:  Don't forget the microphone that's on

6   counsel table.

7              MR. PLAMONDON:  Sure.  Thanks.

8              MS. GEENEN:  Again, Your Honor, in order not to use up

9   more of the --

10              THE COURT:  Microphone.

11              MS. GEENEN:  Yes.  Again, Your Honor, in order not to

12   use up more of the Court's time, we are happy to have the

13   defendants file a trial brief on January 16th, and we'll

14   either exercise our right to file a reply trial brief or not

15   as necessary.  I don't know that it makes sense for us to go

16   through part and parcel to decide whether Edwards applies or

17   not just today.  We can do that together in conference with

18   counsel, and then also in the submission of the trial briefs.

19   I don't have any objection to the defendants filing trial

20   briefs or supplemental trial briefs.  I just want to be

21   cognizant of the Court's time today.

22              THE COURT:  So I need not say anything in the

23   supplemental pretrial order about the undisputed facts and

24   the disputed facts?

25              MS. GEENEN:  I think, Your Honor, you can -- if you

1    only say that the parties set forth the disputed and

2    undisputed facts in their joint trial -- joint pretrial

3    conference statement and reference the page numbers, that

4    would be sufficient.  I think the parties themselves can

5    address the application or not of issues raised by the

6    Edwards decision as it applies to the claims presented and to

7    the affirmative defenses presented by the parties.

8           MR. PLAMONDON:  I don't disagree with having a

9    reference to this.  I'm not entirely sure that it

10   accomplishes -- what it accomplishes, but I don't see how it

11   could harm anything.  It certainly -- I mean, is the Court

12   still looking for us to point out references to facts, or are

13   we moving on from that in light of the fact that plaintiff's

14   counsel has no objection to the submission of -- to the

15   submission of trial briefs on the schedule that was proposed

16   earlier in this hearing?

17          THE COURT:  I was trying to figure out what I should

18   do in a pretrial order.  If I say something is incorporated

19   into the pretrial order, it's in the pretrial order.  And I

20   don't think I simply make reference to the parties's joint

21   pretrial statement unless that reference is to incorporate

22   them into the pretrial order, otherwise it makes no sense to

23   make reference.  It causes the pretrial order to be

24   ambiguous.

25          I had said at the very beginning of this proceeding

 1     that if Edwards is an issue then the defense needed to figure

 2     out how to bring that issue to my attention, and I didn't

 3     think it should be brought to my attention in in limine

 4     motions.  I'm not sure that I should be providing further

 5     guidance on it, but perhaps it's not a ripe issue for

 6     decision anyway.  If plaintiff is taking the position that

 7     plaintiff is going to avoid whatever Edwards prohibits, and

 8     convinces the defense that it's been avoided, then it doesn't

 9     become an issue at all.

10          If you're not convinced, then it appears that maybe

11     you won't see the issue in a crystallized form until you have

12     an actual jury instruction, which creates a problem for me,

13     because the trial will start what seems to me to be a few

14     days after I get your trial briefs in, and that's really when

15     you'll be bringing the issue to my attention, and then at

16     some point I would be expected to figure it out.  It really

17     sounds like it's like a law and motion type issue that would

18     typically be handled by my law clerks on a regular briefing

19     schedule, unless there is some basis for an expedited

20     briefing schedule.

21          So, perhaps the supplement says what I just said in a

22     more concise manner, and that I reference Edwards as being

23     the defense's position -- although, the defense is indicating

24     that that issue is ripe for a decision right now.  You are

25     sort of indicating that.  Because you were going to point to

 1   the joint pretrial statement and you were going to show me, I

 2   think, what you considered to be something that's barred by

 3   Edwards.  And then that was going to be time consuming, it

 4   appeared like that, because you were still looking at it when

 5   plaintiff made the offer that plaintiff made.

 6        MR. PLAMONDON:  I believe that's correct, Your Honor.

 7   I do believe it's going to take some time to connect the

 8   dots, if you will, on this thing here as well.  And I

 9   apologize if I misspoke earlier in the hearing referencing a

10   motion in limine when I meant a trial brief.  But we do

11   believe that there are facts laid out in the joint pretrial

12   statement that would be included in an analysis before this

13   Court of how Edwards applies.  And given that plaintiff's

14   counsel has no objection to filing a supplemental trial

15   brief, we believe that would be the most appropriate way to

16   put the issue before the Court.

17        THE COURT:  All right.  I don't think so.  I mean, I

18   may not have any choice, but I don't think so.  I think that

19   you typically have a movant, you have an opposition, you have

20   a reply, and then the judge takes an opportunity to hear oral

21   argument, and it's up to the judge whether or not the judge

22   is going to have oral argument.  I don't think the judge is

23   typically placed in the predicament where you have to decide

24   all those things on some kind of expedited schedule with

25   citizens sitting in a jury box waiting for me to figure out

1   how I'm going to rule on it.

2          I think that we've gone as far as we can go during

3   this proceeding and I should adjourn it and figure it out in

4   the quiet of my chambers.

5          Thank you.  It's adjourned.

6                    (Court adjourned, 2:57 p.m.)

7                         --o0o--

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                        REPORTER'S CERTIFICATE

2

3                            ---oOo---

4    STATE OF CALIFORNIA      )
     COUNTY OF SACRAMENTO      )

5

6        I, KIMBERLY M. BENNETT, certify that I was the Official

7    Court Reporter, and that I reported verbatim in shorthand

8    writing the foregoing proceedings; that I thereafter caused

9    my shorthand writing to be reduced to typewriting, and the

10   foregoing pages constitute a complete, true, and correct

11   record of said proceedings:

12

13       COURT:   U.S. District Court

14                Eastern District of California

15       JUDGE:   Honorable GARLAND E. BURRELL, JR., Judge

16       CASE:    HANGER PROSTHETICS & ORTHOTICS, INC. vs.

17                CAPSTONE ORTHOPEDIC, INC., et al.

18       DATE:    DECEMBER 15, 2008

19       IN WITNESS WHEREOF, I have subscribed this certificate at

20   Sacramento, California.

21                           /s/ Kimberly M. Bennett
                             KIMBERLY M. BENNETT
22                           CSR No. 8953, RPR, CRR, RMR

23

24

25